**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ANA HADDY and GEORGE HADDY,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. EP-06-CA-0324-FM** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION TO DISMISS, OR,**
**IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE:

COMES NOW the Defendant, United States of America, by and through the United States Attorney for the Western District of Texas, and pursuant to Rule 12, Federal Rules of Civil Procedure, files this Defendant's Motion to Dismiss for failure to state a claim or, in the alternative, pursuant to Rule 56, moves for summary judgment in the above-entitled and numbered cause.

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**

1. Plaintiffs, Ana and George Haddy [hereinafter "the Haddys"], filed their administrative claims with the U.S. Army on January 26, 2004, alleging "negligence of healthcare personnel at William Beaumont Army Medical Center from on or about October 11, 2003, to on or about October 31, 2003 in diagnosing and treating an infection.  Furthermore, healthcare providers failed to obtain informed consent in treating or failing to treat Ana Haddy." (DEX 1; Administrative Claim letters). The Haddys did not provide any expert medical opinion in support of their claims.  On April 6, 2005, the Army initially denied the Haddys' claim.  (DEX 2; U.S. Army Claims Service Denial Letter). The Army's investigation revealed that the treatment Ana Haddy received at WBAMC conformed to all applicable standards of care.  After providing a synopsis of the agency's board-certified OB-GYN expert consultant's analysis of Ana Haddy's records, the Army's denial letter stated:

> Our consultant concluded that Mrs. Haddy received excellent care by the WBAMC providers.

> * * *

In conclusion, the care Mrs. Haddy received at WBAMC was appropriate, timely, and effective. There is no credible evidence that supports the allegations. If you would like to submit a written opinion from a board-certified OB/GYN in support of the allegations, please do so within 30 days of the date you receive this letter. Otherwise, I will recommend that final action be taken on the claim based on the evidence currently in the file. (DEX 2, p 1-3.)

The Haddys did not respond to the Army's denial letter, and on September 9, 2005, the Army took final administrative action on the claim. (DEX 3, Final Agency Action Memorandum). In that letter the agency concluded:

> The claims are denied. As outlined in our letter to you dated April 6, 2005, ... our medical consultant, a board-certified obstetrician-gynecologist, concluded that the standard of care was met in all aspects of the care provided to Mrs. Haddy at WBAMC.
>
> The claims are also denied as unsubstantiated. In the same letter dated April 6, 2005, you were requested to submit your expert's opinion in substantiation of your clients' allegations within 30 days of the date of your receipt of the letter. You requested and were granted an extension of time to submit the opinion until September 1, 2005. To date, we have not received your expert's opinion.

(DEX 3, p. 1).

On March 6, 2006, the Plaintiffs responded to the Army's September 9, 2005, memorandum with solely a fax cover sheet stating nothing more than, "Please consider this a request for reconsideration of the FTCA claims of Ana Haddy and George Haddy." (DEX 4). On March 13, 2006, the Army affirmed the denial of the Plaintiffs' claims:

> You have presented no basis for reconsideration despite our request that you do so. ... [D]espite repeated requests that you provide an expert opinion substantiating the allegations of negligence, you failed to do so. There is no evidence of negligent or wrongful acts or omission by the United States or its employees acting within the scope of their employment.

(DEX 5, Final Reconsideration Memorandum).

2.    On September 13, 2006, Plaintiffs filed their Original Complaint, (Doc. 1) and served Defendant on November 30, 2006. The Haddys' instant action is brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq. They allege medical malpractice by Army physicians at WBAMC due to an alleged "failure to timely diagnose and treat Ana Haddy's infection, abscess, and related symptoms." (Doc. 1, para. D. 6; see also para. E. 7.) The Haddys' Complaint

further alleges that the Defendant failed to obtain informed consent of Ana Haddy in treating or failing to treat her symptoms.  (Doc. 1, para. D.6.).  Defendant timely filed its Answer on January 29, 2007.  (Doc. 5), and timely provided its Rule 26(a) disclosures on March 21, 2007.  (DEX 6). After prompting by Defendant on April 16, 2007, Plaintiffs provided their initial disclosures on April 22, 2007.  (DEX 6 & 7).

      3.      The parties filed a draft Scheduling Order on March 12, 2007.  (Doc. 7).  Per the Court's March 14, 2007, Scheduling Order, Plaintiffs were Ordered to FILE their expert witness designation, and SERVE Defendant with their expert report (s) (i.e. FRCP 26(a)(2)(B) materials) on or before <u>July 26, 2007</u>.  (Emphasis Original) (Doc. 8).

      4.      On April 20, 2007, Defendant propounded written discovery on the Plaintiffs.  (DEX 8).  Plaintiffs belatedly responded on June 2, 2007, despite an agreed extension until only May 29, 2007, citing typical litigation commitments and Plaintiffs' unextraordinary personal obligations. (DEX 9).

      5.      Per the Court's March 14, 2007, Scheduling Order, Plaintiffs' settlement demand was due "no later than <u>June 8, 2007</u>." (Emphasis Original) (Doc. 8).  After prompting by Defendant on June 26, 2007, Plaintiffs complied on June 28, 2007, giving the Defendant one day to timely respond.  (DEX 10).

      6.      On July 20, 2007, citing the illness of counsel, Plaintiffs requested that Defendant agree to an extension of time from July 26 to August 16, 2007, for the Plaintiffs to file their expert witness designation and serve their expert report(s).  (DEX 11).  In the spirit of cooperation, on July 23, 2007, Defendant indicated it would not oppose such a motion and re-iterated such on July 31, 2007.  (DEX 12).  However, Plaintiffs never filed said extension motion.

      7.      On July 31, 2007, Defendant faxed and mailed the Plaintiffs a letter inquiring as to their failure to either comply with the Court's Scheduling Order or file the previously discussed motion for extension, and requesting that counsel perform one or the other so that the Defendant would not feel compelled to move to strike the Plaintiffs' expert report.  (DEX 12).

8.      On August 2, 2007, Defendant agreed to extending Plaintiffs' expert deadline from July 26 to August 29, 2007, provided the motion requested that the Defendant's expert deadline be extended from August 27 to September 29, 2007.  (DEX 13).  However, Plaintiffs never filed said motion.

9.      On August 30, 2007, more than one month after the Court's Scheduling Order deadline, Plaintiffs filed a motion for an extension of time to designate experts and serve expert report(s) that was not in accordance with what the Defendant agreed to in its last communication with the Plaintiffs on August 2, 2007, and without conferring with the Defendant. (Doc. 11).  On that same date, yet again in a spirit of cooperation, Defendant filed a response in only partial opposition. (Doc. 12).  Defendant did not oppose the extension itself due to Plaintiffs' counsel's cited illness from July 7, 2007 to August 27, 2007.  *Id.*  Defendant opposed the Plaintiffs proposing dates not discussed with the Defendant, and which utterly failed to take into account the fact that the Plaintiffs' proposed dates, if granted, would provide the Plaintiffs an extension at the expense of the Defendant and deprive the Defendant of adequate time to comply with its own deadlines.  (Doc. 12).

10.     On September 25, 2007, the Court denied without prejudice the Plaintiffs' motion for an extension for failing to confer with the Defendant.  (Doc. 13).  After failing to hear from the Plaintiffs and having still not received an expert report or a new motion, on October 12, 2007, Defendant forwarded by mail and facsimile the Court's September 25, 2007, Order and reminded the Plaintiffs of the November 4, 2007 discovery deadline.  (DEX 14).

11.     On October 22, 2007, almost three months out of time, Plaintiffs filed an unopposed motion for an extension of time in accordance with the local rules requesting an extension from July 26, 2007 to November 28, 2007.  (Doc. 14).  On October 25, 2007, the Court issued a second Scheduling Order amending the Plaintiffs' deadline to designate expert witnesses and serve expert reports to November 28, 2007. (Doc. 15).

12.     Despite the generous extension of their expert deadline from July 26, 2007 to November 28, 2007, as of the date of this pleading Plaintiffs have neither designated an expert nor served Defendant with an Fed. R. Civ. P. 26(a)(2)(B) expert report.

## SUMMARY OF ARGUMENT

In Texas, medical expert testimony is required on the issues of medical negligence and causation.  To establish a *prima facie* case and raise a triable issue, the plaintiff is required to produce evidence of a "reasonable medical probability" that the alleged injuries were proximately caused by the negligence of the Defendant and the ultimate harm that resulted from such negligence. In this case, Plaintiffs cannot establish either of these two critical elements because they have failed to provide an expert report as required by the Court's two Scheduling Orders and Fed. R. Civ. P. 26(a)(2)(B).  Without this required expert evidence indicating both the standard of care and that the injuries were "proximately caused" by a breach of the standard of care, Plaintiffs' case can proceed no further and the case is ripe for summary judgment.  Accordingly, the Haddys' instant action should be dismissed or, in the alternative, summary judgment granted in Defendant's favor on all claims.

## LAW & ARGUMENT

A.  *Plaintiffs Cannot Establish A Prima Facie Case of Medical Negligence as to the Treatment Received*

Despite a four month extension providing the Plaintiffs ample opportunity to comply with the Court's Orders, they have neither filed their expert designation nor served Defendant with an Fed. R. Civ. P. 26(a)(2)(B) expert report.  Consequently, the Haddys cannot establish the essential elements of their case by competent expert testimony, to wit: that the alleged injuries were proximately caused by a breach of the standard of care.

Plaintiffs filed their complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., alleging that they both suffered damages that were proximately caused by negligent medical treatment rendered to Ana Haddy by health care providers employed by the Defendant. (Doc. 1, para. D.6 & E.7).  Plaintiffs' Complaint specifically alleges that the Defendant's

allegedly negligent medical care directly and proximately caused both of them physical pain and mental anguish, lost earnings, damage to earning capacity, disfigurement in the past and future, medical expenses in the past and future, physical impairment in the past and future, loss of consortium in the past and future, and loss of household services in the past and future. (Doc. 1, para. F.8). Plaintiffs, however, have failed to support their allegations with any expert medical evidence or testimony.

With respect to any alleged negligence, the United States as sovereign, is immune from suit except to the extent it consents to be sued. *United States v. Orleans*, 425 U.S. 807, 813 (1976); *Honda v. Clark*, 386 U.S. 484, 501 (1967). Under the FTCA, however, the United States waives its sovereign immunity in cases alleging the negligent action of the United States' employees acting within the course and scope of their employment. 28 U.S.C. §§ 1346 (b), 2671-80; *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 510, 511 (5th Cir. 2000). The United States is liable in damages only if a private person would be liable for the same allegedly negligent act or omission under the laws of the state within which the act or omission occurred. 28 U.S.C. § 2674; *Richards v. United States*, 369 U.S. 1 (1962); *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993).

A medical malpractice suit under Texas law is essentially a suit for negligence. A plaintiff bears the burden of establishing four elements: (1) existence of a duty of care; (2) breach of that duty; (3) actual injury to the plaintiff; and (4) a showing that the breach was a proximate cause of the injury. *Hollis v. United States*, 323 F.3d 330, 336 (5th Cir. 2003)(quoting *Urbach v. United States*, 869 F.2d 829, 831 (5th Cir. 1989)); *Skipper*, 1 F.3d at 352. A physician has a duty to render care to a patient with the degree of ordinary prudence and skill exercised by physicians of similar training and experience in the same or similar community under the same or similar circumstances. *Hollis*, 323 F.3d at 336 (citing *Speer v. United States*, 512 F. Supp. 670, 675 (N.D. Tex. 1981), *aff'd* 675 F.2d 100 (5th Cir. 1982)); *Chambers v. Conway*, 883 S.W.2d 156, 158 (Tex. 1993). Texas tort law "places the burden of proof on the plaintiff to establish by expert testimony that the act or omission of the defendant physician fell below the appropriate standard of care and was negligent." *Hollis*,

323 F.3d at 336-37 (quoting *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1020 (5th Cir. 1993)).

Under Texas law, it is well settled that the burden of proving that the medical care complained of was negligent and that such negligence was the proximate cause of harm rests squarely with the plaintiff. *Bowles v. Bourdon*, 219 S.W.2d 779, 782 (1949). A plaintiff has no cause of action for medical malpractice unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the Plaintiffs' injuries. *Id.*; *Bradley v. Rogers*, 879 S.W.2d 947 (Tex. App.-Houston [14th Dist.] 1994, pet. denied); *Wendenburg v. Williams*, 784 S.W.2d 705, 706 (Tex. App.-Houston [14th Dist.] 1990, pet. denied).

Expert testimony is required on the issues of medical negligence and causation. *Bowles*, 219 S.W.2d at 785; *Hart v. Van Zant*, 399 S.W.2d 791, 792 (Tex. 1965); *American Transitional Care Centers of Texas, Inc., v. Palacios,* 46 S.W.3d 873, 876-877 (Tex. 2001). *See also Gonzalez v. United States,* 600 F. Supp. 1390, 1393 (W.D. Tex. 1985). Because assessing the standard of care in a medical malpractice case requires skill not ordinarily possessed by a lay person, the fact finder must be guided by expert medical testimony. *Hood v. Phillips*, 554 S.W.2d 160, 165-166 (Tex. 1977); *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.–Corpus Christi 1999).

Thus, the Texas courts have clearly stated that in order to proceed in a medical malpractice case the plaintiff must, at a minimum, establish by competent expert medical testimony that the articulated standards of care were not met *and* that the injuries claimed were proximately caused by such a breach. *See Edwards v. United States*, 519 F.2d 1137, 1140 (5th Cir. 1975)(expert testimony must establish a professional standard of care and a deviation from that standard); *Portillo v. United States*, 816 F. Supp. 444, 446 (W.D. Tex. 1993). A party can recover for allegations of medical malpractice only when it can be affirmatively demonstrated that the diagnosis or treatment was not an error of judgment, but a matter of negligence which proximately caused the damage he claims. *Shevak v. United States*, 528 F. Supp. 427, 432 (N.D. Tex. 1981); *Williford v. Banowsky*, 563 S.W.2d 702, 705 (Tex. App.–Eastland 1978, pet. ref'd n.r.e.). "Evidence of proximate cause *must show* that

in the absence of the alleged breach the harm would not have occurred, *and must state,* describe, or explain *the connection* between the breach and the harm *in sufficient detail to support the expert's assertion of proximate cause.*"   *Guile v. United States*, 422 F.3d 221, 227-28 (5th Cir. 2005) (emphasis added).

In the instant case, Plaintiffs have no expert medical testimony to discharge their burden of proof and, therefore, cannot establish the essential elements of their case.   Accordingly, they have failed to establish a *prima facie* case of medical malpractice.

B.  *Plaintiffs Cannot Find An Expert To Support Their Case Despite Ample Opportunity*

Plaintiffs commenced their administrative action almost four years ago when they filed their claim with the Army on January 26, 2004 (DEX 1).   During the administrative phase, despite requests from the Army, Plaintiffs could not provide any expert medical evidence to rebut the Army's investigation which concluded that the medical personnel at WBAMC had complied with the applicable standard of care.   Consequently, on April 6, September 9, 2005,  the Army initially denied the Plaintiffs' claim. (DEX 2).   The Army had asked Plaintiffs for an expert report five months before finally denying the claim; however, the Haddys failed to produce any expert medical evidence to support their allegations. (DEX 2 and 3).   The Haddys also failed to produce any expert medical evidence to support their allegations, despite their request that the Army reconsider its denial of the claim. (DEX 5).   The Plaintiffs' inability to find an expert to support their case during the administrative phase has carried over into their instant civil action.

The Court's March 14, 2007, Scheduling Order set July 26, 2007, as the deadline for the Plaintiffs to provide the Defendant with their FRCP 26(a)(2)(B) expert report.   Unable to find an expert to support their case, on October 22, 2007, almost three months out of time, Plaintiffs filed an unopposed motion for an extension of time requesting an extension from July 26, 2007 to November 28, 2007.   On October 25, 2007, the Court issued a second Scheduling Order amending the Plaintiffs' deadline to designate expert witnesses and serve expert reports to November 28, 2007.

Plaintiffs have repeatedly failed to adhere to the Court's deadlines. They have neither filed their expert designation nor served Defendant with a FRCP 26(a)(2)(B) expert report as Ordered in the Court's second Scheduling Order.

C.   *Plaintiffs Also Can Not Establish a Prima Facie Case of Medical Negligence as to Their Informed Consent; Plaintiffs Provided Informed Consent to the Surgical Procedures Performed*

_____ In Texas, the Plaintiffs cause of action for the alleged failure of a doctor to fully inform the patient of the risks of surgery is also a medical negligence cause of action. *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex. 1989). The prima facie case of is the same as for any other medical negligence suit: (1) existence of a duty of care; (2) breach of that duty; (3) actual injury to the plaintiff; and (4) a showing that the breach was a proximate cause of the injury. *Id.* As such, Defendant incorporates by reference the legal authority cited in subpart *A* of this motion*, supra*.

In addition, in order to establish that the alleged failure to obtain informed consent was the proximate cause of the Plaintiffs injuries, the Plaintiffs, on the merits, must prove that a reasonable person would have refused the treatment or procedure had they been fully informed of all inherent risks which would influence their decision. *Greene v. Thiet*, 846 S.W.2d 26, 31 (Tex. App.--San Antonio [4th Dist.] 1992, *writ denied*)(citing *McKinley*, at 410). Additionally, the Plaintiffs must also establish on the merits that Ana Haddy was injured by the occurrence of the risk of which they were not informed. *Id.* (citing *Jones v. Papp*, 782 S.W.2d 236, 241 (Tex. App.--Houston [14th Dist.] 1989, *writ denied); Hartfiel v. Owen*, 618 S.W.2d 902, 905 (Tex. Civ. App.--El Paso 1981*, writ ref'd n.r.e.); see also Karp v. Cooley*, 493 F.2d 408, 421-22 (5th Cir.), *cert. denied*, 419 U.S. 845 (1974).

In addition to the Plaintiffs' lack of any expert medical evidence on the standard of care and proximate cause, the undisputed admissible evidence indicates that the Plaintiffs were fully informed of the inherent risks to Ana Haddy's procedure prior to deciding to go forward with the surgery. The Plaintiffs were advised of the risks of the surgery that the doctors recommended for Ana Haddy, the Plaintiffs understood these risks, the Plaintiffs discussed these risks with each other the night before the surgery, and both Plaintiffs provided informed consent.

George Haddy is a dentist with also a Masters degree in Public Health. (DEX 15, p. 16, line 13 to p. 18, line 4, George Haddy deposition). He attended two years of medical school as part of his dental training, and is the health director of a community hospital. *Id.* p. 16, line 22-23, p. 17, line 8-18, p. 18 line 5-8. As such, he was quite familiar with the informed consent process before Ana Haddy's November 6, 2003 surgery. (DEX 15, p. 39, line 8 - 21).[1] George Haddy would also often translate for his wife at her and their military and civilian medical appointments. (DEX 15, p. 37, line 5 - p. 38, line 2).

Ana Haddy attended five years of college, and has the equivalent of a bachelor's degree in psychology from the Universidad Metropolitana in Barranquilla, Colombia. (DEX 16, p. 32, line 11 - 23). Ana Haddy studied some English while at the university in Colombia, began daily study of English within six months after her arrival in the U.S. in November 2002, and admitted to understanding "some English" in October 2003. (DEX 16, p. 18, line 20-24; p. 32, line 24 to p. 36, line 17).

According to Ana Haddy's WBAMC medical record, the treating physician's, Dr. Walshe's "Operative Counseling Note" dated November 5, 2003, states,

> Indications and risks discussed with patient and husband. Indication ... CT scan follow up reveals (up arrow) [increased] size of pelvic mass which may represent a tubo-ovarian abscess. **Risks include** but not limited to ... **infertility, removal of one or both fallopian tubes and or ovaries** ...persistent or chronic pain ... pelvic adhesive disease ... need for hormone replacement... . **Patient and husband counseled thoroughly through interpreter Dr. Rodriquez and agree to proceed with operative plan & accept risks. Consent signed.**
> (DEX 17, Ana Haddy's WBAMC medical record, p. 274-273) (Emphasis Added).

George Haddy acknowledged that he and his wife were advised consistent with Dr. Walshe's Operative Counseling Note, and that George also discussed with his wife the full extent of the risks, to include the potential risks to her fertility and possible removal of both of her fallopian tubes. (DEX 15, p. 65, line 5 to p. 67, line 12; DEX 18, p. 188 & 215 of Ana Haddy's WBAMC medical

---

[1] In addition, the Plaintiffs had gone through the informed consent process only a few weeks prior with a civilian physician, Dr. Gluck, before the intrauterine injection fertility procedure that caused the infection for which Ana Haddy sought treatment at WBAMC. (DEX 6, p. 65, line 5 to 13).

record).  George Haddy specifically recalled Dr. Walshe advising Ana and him of the possible removal of her fallopian tubes and possible need to "go with a bigger incision ... like having a C-section." (DEX 15, p. 65, line 5-19; p. 66, line 9-21).  Ana Haddy recalled being advised of the risks by the doctors  the night before the procedure, and that she was not under sedation at the time.  (DEX 16, p. 88, line 4-9).  Ana Haddy specifically recalled being advised that the laparoscopic procedure might have to be converted to an open procedure, however, unlike her husband, she recalled little else.  (DEX 16, p. 86, line 9 to p. 88, line 3; p. 90, line 15).

Ana and George Haddy each verified their signatures on the consent form dated November 5, 2003, the day before Ana Haddy's surgical procedure at WBAMC.  (George - DEX 15. p. 73, line 4 - 19; Ana - DEX 16, p. 88, line; and DEX 18, p. 188).  The consent form signed by the Plaintiffs, after Dr. Walshe's operative counseling translated by Dr. Rodriquez, identifies the operation to be performed as "diagnostic operative laparoscopy possible exploratory laparotomy with possible removal of diseased tissue." (DEX 18, p. 188).  Under the "Statement of Request" it states,

> The nature and purpose of the operation or procedure, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me.  I acknowledge that no guarantees have been made to me concerning the results of the operation or procedure. **I understand the nature of the operation or procedure to be look in the abdomen and pelvic cavity with a scope, possible incision into the abdomen using a knife to open the abdomen and explore and possible removal of diseased tissue through a large incision.** *Id.* (Emphasis Added).

Lieutenant/Army Nurse Samuel Perez indicated on the Preoperative/Postoperative Nursing Document and the Intraoperative Document, both dated November 6, 2003, "consent verified by patient." (DEX 19, Ana Haddy's WBAMC medical record p. 232-230).  Finally, the surgical checklist dated November 6, 2003, indicates that when Ana Haddy was asked to describe in her own words the kind of surgery she was having, George interpreted for her and Ana's response was "look with scope and if possible remove infection and if have to will cut open stomach." (DEX 18, p. 215).

According to the Operative Report, the surgical procedures performed on Ana Haddy on November 6, 2003, were: diagnostic operative laparoscopy,[2] exploratory laparotomy,[3] right salpingectomy,[4] left salpingostomy,[5] right ovarian cystectomy,[6] and lysis of adhesions.[7] (DEX 21, Ana Haddy's WBAMC Medical Record, p. 213, Operative Report). Thus, there is no evidence that the Plaintiffs did not understand the risks of the procedures performed, in particular that Ana Haddy could end up with a large scar on her abdomen, and that if the tissue had become diseased due to her infection she could have one fallopian tube removed and another fallopian tube drained by surgical incision. Equally absent is any evidence that the Plaintiffs' informed consents did not extend to the procedures that were performed on Ana Haddy at WBAMC on November 6, 2003. In fact the evidence from the Plaintiffs indicates that what is documents in Ana Haddy's medical records is accurate, that they were advised of the risks of the procedure and the risks to her fertility.

While it is unfortunate that medical necessity required removal of one fallopian tube and an incision to the other, and the conversion to an open procedure thereby causing a larger surgical scar, the Defendant is also entitled to summary judgment on this issue. Plaintiffs have no expert medical testimony to discharge their burden of proof and, therefore, cannot establish the essential elements of their case. The evidence also indicates that the Plaintiffs were aware of the risks that ultimately came to fruition. Accordingly, they have failed to establish a *prima facie* case of alleged medical negligence through failure to obtain informed consent for Ana Haddy's November 6, 2003 surgery.

---

[2] A laparoscopy is an examination of the interior of the abdomen using a laparoscope. (DEX 20A, excerpts from *Dorland's Illustrated Medical Dictionary* (28th ed.) (1994).

[3] A laparotomy is a surgical incision through the flank or abdominal section to gain access to the peritoneal cavity. (DEX 20A). For a description of the peritoneal cavity, i.e. the peritoneum, *see* the diagram at DEX 20B.

[4] A salpingectomy is the surgical removal of the uternie tube, i.e. the tuba uterina, also known as the fallopian tube or salpinx. (DEX 20C & 20D).

[5] A salpingostomy is the surgical restoration of the opening of a uterine tube. (DEX 20E).

[6] A cystectomy is the removal, by cutting, of a cyst. (DEX 20F & 20G).

[7] The use of an appropriate substance, i.e. lysin, to destroy adhesions. (DEX 20H).

D.  *Plaintiffs Cannot Survive Defendant's Instant Dispositive Motion*

To raise a fact issue sufficient to defeat summary judgment, the Plaintiffs must have a medical expert who can provide competent testimony to specifically identify the standard of care, establish the expert's familiarity with that standard, and explain why the treatment rendered by the defendant breached the standard of care and caused the alleged injury.  *Knetsch v. Gaitonde*, 898 S.W.2d 386, 388 (Tex. App. –San Antonio 1995, no pet.).  Hence, Plaintiffs are required to produce evidence of a reasonable medical probability that their alleged injuries were caused by the negligence of Defendant and the ultimate harm and condition resulted from such negligence.  *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993).  As Plaintiffs cannot produce any expert evidence to support their case, they cannot defeat Defendant's instant dispositive motion.

Pursuant to Rule 12, Federal Rules of Civil Procedure, a motion to dismiss may be granted if it appears to a certainty that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  If, on a motion asserting the defense of failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.  Fed. R. Civ. P. 12.

Summary judgment may be granted only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  After adequate time for discovery, summary judgment is proper against parties who fail to establish the existence of an element essential to their case and as to which they will bear the burden of proof at trial. *Portillo v. United States*, 816 F. Supp. 444, 447 (W.D. Tex. 1993) (citing *Celotex Corp.*, 477 U.S. at 322), *aff'd* 29 F.3d 624 (5th Cir. 1994).  In seeking summary judgment, the movant bears the initial burden of identifying those portions of pleadings and discovery in the record that demonstrate the absence of an issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  However, where the non-moving party bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322;

*Lindsey v. Sears & Roebuck & Co.,* 16 F.3d 616, 617 (5th Cir. 1994). The movant is not required to negate the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 323; *Edwards v. Your Credit Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). The court cannot assume, in the absence of any proof, that the nonmoving party could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Plaintiffs do not have a medical expert, as required under Texas law, to establish the essential elements of their case. The record demonstrates that both the agency and the Court have provided the Plaintiffs with ample time and opportunity to locate an expert to support their case. The Defendant United States has demonstrated the absence of an issue of material fact which Plaintiffs cannot rebut. As Plaintiffs cannot produce any expert evidence that Defendant breached the applicable standard of care or that Defendant proximately caused their alleged injuries, the Haddys cannot survive Defendant's instant dispositive motion. Thus, the Court should grant the Defendant's instant motion.

## <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, the United States of America, Defendant, respectfully prays that Plaintiffs' complaint be dismissed[8] or, in the alternative, that summary judgment be granted in favor of the Defendant on all claims.

---

[8] In the alternative, Defendant also moves to dismiss Plaintiffs' case under Fed. R. Civ. P. 41(b) for failure to prosecute, failure to comply with Fed. R. Civ. P. 26, and failure to comply with the Court's Orders.

**Haddy/Defendant's MTD/MSJ**                                          **Page 14 of 15**

Respectfully submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY


/S/_____
KATHERINE A. LEHMANN
Special Assistant U.S. Attorney
Colorado State Bar No. 26428
700 E. San Antonio, Ste. 200
El Paso, Texas  79901
Office (915) 534-6884
Facsimile (915) 534-6861


## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of December, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: **John Caldwell, Jr.**, Attorney for Plaintiffs.


/S/_____
KATHERINE A. LEHMANN
Special Assistant U. S. Attorney